We'll move now to the second case, Thompson v. DeKalb County. Ms. Atwood. Yes, Your Honor. You ready? Yes, sir. Thank you. Good morning, Your Honors. I'm Eleanor Atwood on behalf of Mark Thompson, the appellant, and I'm thrilled today to share my time with Susan Oxford, who's from the Office of General Counsel with the EEOC in DC, and we appreciate the opportunity to present Mr. Thompson's case to you today. I submit that the district court committed reversible error in two major ways. One was to not even consider Mr. Thompson's evidence of age discrimination under a convincing mosaic standard, and the second was to rule as a matter of law, despite evidence to the contrary, that he was not replaced by someone younger, and it seems to me that there's a good case here that the district court was wrong about whether your client presented a prima facie case. My concern, though, is about whether you rebutted their legitimate non-discriminatory reason with evidence of pretext, which was also presented, although not ruled upon, by the district court. It was presented to the district court and has been fully briefed here. Yes, Your Honor. I appreciate that. Thank you. I would say that we demonstrate a pretext in a couple of ways. One, and I think most notably, when Ms. Brantley, the decision-maker in this case, decided that Mr. Thompson needed to be terminated, she did so on the basis that he had withdrawn from the champion role, which is a complicated case that went on for years, and a week later she sends him a letter, a termination letter, that all of which had to do with him being unable to explain himself in a clear way and also being hostile and arrogant. The letter itself did not mention the champion case and it certainly didn't say anything about him withdrawing from it. So, within a week's time, we basically have a shifting justification. Counsel, sorry, this is Robert Lux. I'm looking at a copy of the letter. How is the statement, you have also responded to stressful litigation situations in a hostile and arrogant manner when interacting with me and others within the office during recent months, and this type of behavior is inconsistent. How is that inconsistent with somebody who sort of, at least viewed from Brantley's perspective, I'm not saying it's true, sort of in a huff because they didn't adopt the argument that he wanted to, said, I want out of this case and withdraw. Isn't that sort of encompassed within what happened with champion and Well, your honor, I think the short answer to that is we presented evidence that he did not act in either of those ways. He was neither hostile nor arrogant. But isn't the issue for us whether Brantley believed it, not whether he did or didn't. I mean, whether he did or didn't isn't irrelevant, but the ultimate question is, did Brantley actually believe that or was he using it as a pretext to dismiss him based on age? Right, well, that would be the jury, your honor, and when we have the background of remarks that she has made, which is also part of the pretext argument, when her termination justification is laid at the feet of her hiring trends and her remarks about baby lawyers and about needing to fill the nursery, and frankly the most probative one, which is her own boss telling her that he was tired of older employees and that justification, which we have rebutted, at the feet of those remarks and her own hiring trend, where 12 out of the 13 people she hires are under the age of 40. Didn't the attorneys with which you deposed in the office uniformly, and tell me if I'm incorrect, uniformly said they understood the baby lawyer remark to be about experience, not about age. In other words, they wanted people with not less experience so that there was a different staffing model at the office, rather than they wanted people who are under the age of 40. Wasn't that the testimony? Well, that was some of the testimony, and there were other bits of the testimony that were, no, you know, I'm older and I began to get a little concerned as she repeated the baby lawyers comment over and over and over again. Counsel, since we're on a motion for summary judgment, don't we have to accept the fact that, or the evidence, I guess, that most favors the non-moving party? Absolutely. Yes, ma'am, that is what we have to do. And if the own lawyers in the office who are hearing her make these comments are on different pages about what those comments mean, certainly a jury could do the same. Two minutes remaining. So, I believe in the backdrop, Your Honor, of... I don't see how any of what you just, you know, explained, Ms. Atwood, shows that the decision-maker here did not believe that he had been hostile and arrogant in the way he had expressed himself about that litigation. His co-workers admitted that he was ordinarily a calm person, but he was very passionate about this litigation, and his own testimony confirmed that. Yes, and there is a difference, I would submit, and I think a jury could see the same difference between being passionate about a corruption case that you are, that you're trying to defend and prosecute, turning to, oh, all of a sudden he is now hostile and arrogant. Remember, Your Honors, the issue for her... One person perceives to be passionate, though another perceives to be hostile and arrogant. Absolutely, Your Honor, but understand, her initial desire to terminate him, according to her own testimony and that of her deputy, was not about his hostility and his arrogance. It was about he wanted to withdraw from the case. It didn't morph into something else until she had to put pen to paper and to come up with a justification, and in light of the backdrop, and Your Honors, the backdrop of the comments, of the directive she got from her own CEO, and the hiring trends which we see in the office, I shudder to think the district court can just ignore that evidence, and decide, and weigh the credit, and decide itself, hey, we're going to side with the decision maker here, and take it out of the jurors' hands. I mean, I don't think the district court is allowed to do that at summary judgment, and I want to make sure I give Ms. Oxford her due time. Okay, you've saved three minutes for rebuttal. Ms. Oxford? Good morning, and may it please the court, my name is Susan Oxford, representing the Equal Employment Opportunity Commission as amicus vicariae. If the court doesn't have any questions on the EEOC's argument that Thompson showed sufficient evidence that he was replaced by someone outside his protected class, I will focus my comments on the second way that plaintiff argued that they could prevail here, and that is the convincing mosaic of circumstantial evidence. Because the evidence that plaintiff pointed to there, as part of the convincing mosaic, is in fact the same kinds of evidence that this court has looked at when examining whether a plaintiff has established pretext. And if I could respond first to a question I the deposition testimony from the other attorneys in the office saying that they understood Brantley's comments about baby lawyers to be referring to attorney experience, not age. And there's two things I'd like to point out about that. One is, she did not just say she wanted to hire baby lawyers and say it over and over again. She also said she wanted to fill the nursery with them, and she chose at a staff meeting to repeat the comments of the county CEO that he was tired of seeing all these older county attorneys and wanted to see some young faces, young employees in the county. So there's three different kinds of remarks that she made over and over, and not every attorney viewed those comments as simply referring to experience. In EEOC's brief on page 5, we cite the deposition testimony of John Jones, who said that at first the baby lawyer remark seemed kind of benign, but with repetition it became a little uncomfortable for him as an older attorney. And plaintiff cites to the deposition testimony in two places in Thompson's brief, page 5 and page 16, where she cites the deposition testimony of Sam Brannan, who said that he understood the comments to be talking about Brantley's desire to have young lawyers in the office. Ms. Oxford, I have a question for you. So what's your position about what the role of a legitimate non-discriminatory reason on evidence of pretext when it comes to trying to prove your case based on a convincing mosaic of circumstantial evidence? So if the employer, to the extent that the employee is relying on that kind of theory, that convincing mosaic, if the employer proffers a legitimate non-discriminatory reason for which there's no evidence that that reason is pretextual, how does that work? The analysis of pretext under the three-step paradigm in McDonnell- Douglas is just a completely different animal from a plaintiff's claim that they've presented a convincing mosaic of circumstantial evidence. And so this court doesn't do a pretext analysis in that sense. What this court has done since Smith v. Lockheed Martin is to look at the whole entire evidence the plaintiff presents. I thought both of these are theories of ways of and that it would seem to me that if the employer, though, is able to proffer, has evidence to support the idea that it did not discriminate based on a prohibited ground, but instead terminated or made whatever adverse decision it made against the employee for a legitimate reason, for a non-discriminatory reason, that that would work equally without regard to whether you're using the McDonnell-Douglas framework or the mosaic theory. In the convincing mosaic framework, the court or the jury would look at all of plaintiff's evidence in relation to the defendant's claim that this was the reason they and decide whether in fact Thompson's entire body of circumstantial evidence adds up to enough to override the claimed legitimate reason. So it amounts to a very similar analysis and I'd like to point out one really significant error that the county makes, legal error in its brief, that goes to this. They say at pages 26 to 29 of the brief that since Smith v. Lockheed Martin, this court has required a high bar to find a convincing mosaic and cite six cases, none of which mention a high bar standard, two of which this court found a convincing mosaic and reversed summary judgment in whole or in part, and on the other four simply examined the evidence. And what's particular to your question, in Alsobrook, which the county cited on page 29 of its brief, this court did find that the plaintiffs failed to establish a pretext, but said that they did for the same reasons that they failed to establish pretext under the burden-shifting framework. So the court there was looking at the same body of evidence, but they were conducting two different kinds of analysis. And so as we explain in our brief here, we believe that Thompson has presented a convincing mosaic, but we are particularly troubled and hope this court corrects in its decision that the district court did not even go to address the convincing mosaic. It didn't reach pretext. I'm sorry. Counsel, this is Robert Luck. I want to follow up on Chief Judge Pryor's question. I just want to be clear, do you agree or disagree, because I was confused by that last comment you made, that pretext is a necessary component of the convincing mosaic analysis? We disagree. How does that square with the case you cited and then with Lewis, for example, where we said that a convincing mosaic may be shown by evidence that demonstrates, among other things, suspicious timing and ambiguous statements, systematic better treatment, and that the employer's justification is pretextual? Well, in fact, I think that for me to say that they're different is just semantics, because the analysis is really does the evidence add up to showing discrimination not a legitimate basis for the defendant's actions. So I think there's enough case law where this court ends up looking at the same body of law, and I think the primary purpose of the convincing mosaic is that it jumps over whether or not there's a prima facie case, and it could, in fact, I suppose, be equated with just jumping straight to pretext and looking at all of the evidence, for which here Thompson had four different categories of evidence that not only included Brantley's ageist comments, but also her hiring pattern of hiring 12 new attorneys in a row, all of them in their 30s, what she did with Thompson by filling his vacancy. Thank you. We are to the court to reverse summary judgment because of the district court's errors. Thank you. Thank you, Ms. Thank you, Your Honor. Randy Gepp, representing DeKalb County. May it please the court, let me first address the discussion on the convincing mosaic and start where in Thompson's response to the original motion for summary judgment, he focused on the McDonnell Douglas prima facie case, and the only mention of convincing mosaic is in the pretext section of his brief, and in that section he almost exclusively argues that Thompson's was terminated because of his whistleblower activity. It's only at the end of that section is there a paragraph where Thompson relates the alleged age comments and the hiring trends to age discrimination. There is no analysis of the convincing mosaic theory in age of age and race discrimination was half-hearted at best. The 11th Circuit has already held that failure to raise the convincing mosaic theory before a magistrate judge allows the district judge discretion to ignore that argument, and that is the cases for that. Connelly versus Wellstar at 758 Federal Appendix 825, and Williams versus McNeil at 557 Fed Third 1287. Of course, we don't really know what the district court thought about this because the district court concluded that there was no prima facie case here, which true appears to me at least to be an error. Well, we think not because under the... Here's the thing, here's where I'm coming from. Brantley testified, as I understand it, that Thompson was replaced by someone younger during her deposition. When asked whether someone 24 years Thompson's junior took Thompson's spot, Brantley replied, I think that's correct. She reaffirmed that by replying yes when asked, you think Scott took Thompson's position or was the one hired shortly after Mr. Thompson was terminated, correct? And, you know, Scott was the first attorney hired after Thompson's termination, was hired three months afterward, was 30 years old when he was hired, and every attorney, all six hired after Thompson was hired were under the age of 40. So it does, it looks to me at least, like that was error. Well, what is being omitted there is Brantley, while her testimony is somewhat ambiguous there, there is ample testimony in the record that her purpose was to hire entry-level attorneys because when she took over, 15 of the 16 attorneys that she had working in the county attorney's office were over 40. The other was 38, I believe. This is summary judgment, you know, the question is whether there's a dispute of fact. It looks, it seems to me that the to create a genuine issue of material fact about whether Brantley replaced Thompson was someone younger. Well, she was hiring assistant county of attorneys. Thompson was a senior assistant county attorney responsible for complex litigation. And the next person she hired was someone, you know, under 30, right? Under 30, who was not for the same position, and the testimonies of... And the next six attorneys were younger. Because she, her theory was, her methodology was to have experienced attorneys working with inexperienced attorneys. Yeah, I get all that, I get all that. I just don't see how on summary judgment a district court can say that there's not at least a genuine dispute that Thompson was replaced by someone younger. Well, there are no comparators. The position that was hired, that Scott took, was different than the position that Thompson had. That's not what Brantley's testimony was. But let's talk about pretext, which I think is your much more productive line of argument. Well, obviously this court can grant summary judgment on any basis, even one not relied upon by the district court. And the plaintiff must address the reasons for termination head-on. And plaintiff is not attempting to do that. It's undisputed that Thompson had various disagreements with his managing attorneys and outside counsel over strategy. He was critical of all attorneys who helped on the case. He withdrew from the case in November of 2014. And at that time, that was a very significant thing, which Brantley felt that Thompson was disrespecting her, acting like a child, and he wanted to terminate her at that, terminate him at that point. She didn't. She kept him on. He withdrew from the case. There's no other attorney who engaged in that kind of conduct. And then you jump forward to May 2015, and he has this meeting with Johnson, where he accuses her of withholding information. They have an argument. Johnson asks him to leave her office. They both reported to Brantley. And on May 29, in a meeting between Brantley, Thompson, Johnson, and outside counsel Anita Thomas, the meeting becomes contentious, so much so that Brantley asked Thomas to leave the room, and she says to Thompson, I've had it with you. You need to find another job. All of this is Thompson. The letter that was cited earlier by the judge from Brantley talks about the hostile and arrogant manner of interacting with Brantley and others in the office, and how she wanted to develop a team environment, and that Thompson was destroying that team environment. All of this shows that there were ample reasons that any employer would terminate somebody who is being disrespectful and not following the directives. Now, Thompson has argued that there is a shifting explanation, but it's not really a shifting explanation. Johnson notes from a meeting that she had with Brantley and Thompson indicate that the withdrawal from the case was a reason for the termination, and it was a reason. That started the ball rolling, if you will, although even before that there were problems with Thompson working with other people on the champion litigation. The withdrawal was part of it, but the last straw was the argument and contentious meeting on May 29. That has not been rebutted by the plaintiff to show that Brantley's motivation was his age and not the contentious nature of the relationship. For no other reason, that is ground for upholding the summary judgment that was granted by the judge. I'd like to also address one point that was raised on convincing Mosaic that was asked about whether if that's part of the prima facie case. Judges Rosenbaum and Luck both participated in the case. There are three things that the court will look for to see if there is a convincing Mosaic. That includes suspicious timing and ambiguous statements. Number two would be systematically better treatment of similarly situated employees outside the protected category. The third is the employer's justification of the termination as pretextual. In our case, we don't have those factors, although I think even without that, what you are indicating is that there may be a question of fact on the prima facie case even under McDonnell Douglas because of the replacement. We have argued to the contrary. We do know that our undermines Brantley's explanation, which was confirmed by Johnson that Thompson was terminated for this course of conduct that was contrary to having a team approach that Brantley wanted. Okay, Mr. Gett. Do you have anything else? I'm happy to answer any questions you may have about that. I don't hear any, so thank you. We'll hear three minutes of rebuttal from Ms. Atwood. Thank you, Your Honor. Thank you, Your Honor. Just a few thoughts. One, we did assert the convincing Mosaic framework in our underlying brief, both to the magistrate and the district court, and I will agree with you for sure that all the evidence can go to either framework, McDonnell Douglas or convincing Mosaic. This court created the convincing Mosaic standard so that a plaintiff didn't have to adhere to an overly formulaic recitation of the evidence in an effort just to survive summary judgment and instead could present circumstantial evidence that created a tribal issue regarding these employers' discriminatory intent. And I would submit this to you, Your Honors. I don't think it's the court's place to simply say in a vacuum the decision-maker's estimation of Mr. Thompson as hostile and arrogant is sufficient. It is not sufficient. And it's not sufficient in this circumstance when you have this other evidence, when you have evidence of the hiring trends, of her own discriminatory remarks, which, frankly, the district court just— I guess the problem I'm having, Ms. Atwood, is it seems to be, to me at least, that there's corroboration for the notion that he had expressed himself in a hostile and arrogant manner and that there's really nothing in this record to rebut the notion that that was the reason he was fired. Well, Your Honor, we have rebutted that notion by way of our other evidence of the age animus, but I do think we have conflicting testimony on this hostility-arrogance issue. In fact, when I asked Ms. Brantley and Ms. Johnson, the deputy county attorney, about this, because it was just sort of a— they sort of threw it out. Well, he's hostile and arrogant. Okay, well, how's that? How is he hostile and arrogant? How did he demonstrate that? And really, the only thing they had to say was it was his choice of wording. He just thought the idea was bad. I think he may have said the idea was stupid. I mean, there's no physical intimidation. There's no yelling. There's no calling names. I mean, and more of the point, Your Honor, is this is an inherently subjective analysis. When you throw that sort of moniker on someone and just the backdrop of all the evidence that we had, a jury could look at that other evidence and say, you know what? Ms. Brantley's just making that up. His coworkers don't agree. This is the only case in which she ever said anything about that. And it just so happens it falls on the heels of hiring all these younger lawyers and hearing from her own boss that he wanted to see a younger workforce in place. Didn't your own client, though, testify that he was deeply dissatisfied? With his superior's actions and express that dissatisfaction to them about that litigation? He absolutely disagreed with the way the litigation played out. He was deeply, he deeply disagreed with it and told them that, right? This isn't just some made up reason. There was something, you know, there were strong feelings about this and they could hold it against Mr. Thompson. Or a jury could hear a committed county attorney who's trying to protect the county, but more to the point, hear all the evidence of Ms. Brantley's discriminatory animus and put that reason that she gave in that frame. And when you do that and you don't just divorce it and set it aside, a jury could absolutely infer from the evidence we have a but-for cause of his termination. Okay. Ms. Atwood, I think we understand your case and we'll take it under submission.